RE: Estate of Z. R. Gilbert, deceased, **MARY L. GILBERT**, v. **BRADFORD GILBERT**, as Administrator of said Estate.

36 So. (2nd) 213 January Term, 1948
June 4, 1948 En Banc
Rehearing denied June 16, 1948

*Cecil A. Rountree,* for appellant.
*James N. Daniel,* for appellee.

BARNS, J.:

Mary L. Gilbert, the decedent's widow, on December 17, 1946, filed in said County Judge's Court her verified petition showing that she was without money or property except her interest in said estate; that it was necessary for her support that the widow's allowance provided by Section 733.20, F.S. 1941, F.S.A., be made for her and prayed that such allowance be made. After due notice, hearing was had thereon and, at said hearing, the County Judge entered order directing the Administrator to pay the widow $100.00 on January 1, 1947, and a like amount on the same day of each month thereafter,

with the provision that not more than $1200.00 should be paid the widow under said order. The Administrator paid the widow eight monthly payments of $100.00 each pursuant to said order.

Mary L. Gilbert filed in said County Judge's Court her election to take dower in the estate of her husband, Z. R. Gilbert, deceased; thereafter the widow's petition for assignment of dower was filed, order of said County Judge's Court was entered adjudging the widow's right to dower and appointing dower commissioners, the dower commissioners qualified by taking oath, performed their duties and filed in said County Judge's Court their report showing they had allotted and set off to the widow as her dower real property having an appraised value of $10,890.00 and constituting one-third in value of the real property of said estate and personal property having an appraised value of $1183.71 and constituting one-third in value of the personal property of said estate.

Upon the widow's application for confirmation of the dower commissioner's report and the administrator's application to charge against the widow's dower the $800.00 previously paid the widow under the order of said County Judge's Court of December 28, 1946, referred to above, and to discontinue the monthly payments being made under said order, the said County Judge's Court entered its order confirming the dower commissioner's report as to the real property and vesting in the widow the fee simple title to said land, requiring the administrator to pay over to the widow $1464.21, as dower in personal property and mesne profits, denying the administrator's application to charge the widow's dower with the $800.00 paid her under the order of December 28, 1946, aforesaid and discontinuing further payments under said order.

The widow was given possession of said real property and $646.21 of her dower in personal property (and mesne profits) was paid over to her, the administrator, by agreement of the parties, retaining possession of the remaining $800.00 until such time as the question of who is entitled thereto is determined on appeal.

Upon appeal to the Circuit Court it was decreed that the above mentioned order be:

"reversed and set aside, and the said County Judge is hereby directed to enter an order in said cause authorizing and directing the said administrator to charge the said sum of $800.00 to the said Mary L. Gilbert and to deduct said sum from the amounts payable to her for dower and mesne profits."

Whereupon the judgment of the Circuit Court was brought here for review by this appeal.

Since 1864 we have had statutory provisions relating to the widow's rights of quarantine and other provisions relating to personal property to be set aside to her for the benefit of the widow and her dependents. See Secs. 5497-5498, C.G.L.

The "F. S. 1941," as did the Probate Act of 1935, failed to carry forward Sec. 5497-5498, C.G.L., but Sec. 733.20 (d) "F.S. 1941," as amended in 1945, provides:

"733.20 Order of payment of expenses of administration and claims against the estate.

"(d) Class four. If necessary for support, a family allowance of one year's support for the widow or minor children of said decedent, or both, in addition to the homestead and exempt personal property. Upon petition of the widow, if any, or of the legal guardian or of the person having the care and custody of a minor child or children, upon notice to the personal representative, a reasonable allowance shall be fixed by the county judge in personal property or money, or both, for the support of said widow and minor children, considering the needs of the family and the value of the estate. Said allowance or the portion thereof payable in money shall be payable in equal periodic payments to be fixed by the county judge and shall be payable to the widow, if any, for the support of herself and the minor child or children, if any. If there is no widow, then the same shall be payable to the legal guardian or to the person having the care and custody of any minor child or children. Upon the petition of any person interested in the estate, the county judge may increase, decrease, discontinue or modify the allowance; but in no event shall such allowance exceed the sum or value of twelve hundred dollars."

And in 1945 it was also provided by law that:

"The widow of an intestate shall be entitled to receive and retain all wearing apparel and such household goods and farming utensils, provisions and clothing as may be necessary for her maintenance and that of the family, to be set apart by the county judge either upon her petition or upon the petition of the personal representative, with citation or notice to the other, special regard being had for the ability of the widow and children to provide for and maintain themselves. Such articles shall not be considered as part of the widow's dower or inheritance in any case. As amended, Laws 1945, c. 22783, Sec. 1."—Sec. 731.36, F.S.A. 1941, F.S.A. (Supp.)

The foregoing statutes were an outgrowth of and based upon the same reason as was the widow's right of quarantine at common law.

Woerner states:

"*Quarantine of Dower.* Under the provisions of Magna Charta, a widow 'shall tarry in the chief house of her husband by forty days after the death of her husband, within which days her dower shall be assigned to her . . . And she shall have in the meantime her reasonable estovers of the common.' Lord Coke interprets this language to mean that dower shall be speedily assigned, 'to the end the widow might not be without livelihood;' and that estovers signifies 'sustenance, or aliment, or nourishment; . . . that is, things that concern the nourishment or maintenance of man in *victu et vestitu,* wherein is contained meat, drink, garments, and habitation.' Lord Coke says that it was certainly the law of England before the Conquest, that the woman should continue a whole year in her husband's house."

Woerner states, in reference to the provisions for alimony for the family of a deceased husband, that it:

" . . . is the right of the surviving members of his family to the necessary means of subsistence, raiment, and shelter during the period immediately succeeding his death, which the law enforces not only against any inconsistent testamentary disposition, but equally against creditors, heirs, and distributees, whose rights, like those of legatees, are controlled by and

532

postponed to the provisions made for the surviving family in this respect."

That:

"They owe their existence to a humane and benevolent consideration of the distress and helplessness of widows and orphans newly bereft of their protector and supporter, and to a wise public policy, recognizing the true relation of the State to the family as its organic, constituent element. 'By the enactment of such laws,' says BATCH, J. of the Supreme Court of Utah, 'the legislature, under a wise public policy, seeks to guard and protect the family which constitutes the foundation of the State itself, during the trying period of affliction and need caused by the death of the one who directed the family affairs."

That:

"These provisions for the protection of the family constitute no gift to the widow to repair any seeming injustice in the Statute of Distribution or the will of her husband, but are intended to furnish to her and her minor children the means of temporary maintenance out of the estate of the deceased husband until their interest therein can be sent out to them, not only protecting so much against the claims of creditors, but also against the heirs, or distributees, legatees, and personal representatives. . . . The beneficiaries are 'entitled to an allowance as a matter of right, on grounds of public policy.' These allowances do not come to the widow or family by inheritance through the deceased's estate but from the law through the order of court. Neither do they form part of the widow's distributive share as next of kin, unless so expressed by the statute."—Sec. 77—Woerner's "The American Law of Administration (Including Wills)—p. 234-5-6.

"Nature of Allowance.—The widow's allowance is sometimes treated as a debt of the deceased and is usually accorded a preference over certain other claims against the estate. The view has also been taken that the allowance to the widow is one of the expenses of the administration rather than an interest in the estate of her deceased husband. It is not, strictly speaking, under homestead or exemption laws. With some ex-

ceptions, it has been generally held that where there is provision for only one form of allowance for the widow, this will not be deducted from her distributive share of her husband's estate, and where there are several different forms of allowance, at least one of these (though often several, or all of them) will not be deducted from the widow's distributive share of the estate. It has also been held that the right to an allowance may be accorded to the widow in addition to her right of dower."—21 Am. Jur. 560-61—Ex. & Adm.—Sec. 315, citing an annotation in 98 A.L.R. 1325.

"Out of What Property Allowance Made.—The allowance to a decedent's widow or family is normally payable out of the assets of his estate and is usually made from the personal property of the estate."—(Ib.)—Sec. 320—p. 563.

"A widow's statutory right of quarantine, which is, in some jurisdictions, an incident of dower and existent only until dower is assigned, expires when her right to have dower assigned is lost by lapse of time."—(Ib.)—Sec. 321—p. 564.

Under the law the widow is entitled to dower in her deceased husband's estate and is also entitled to such alimony or allowance from the estate as may be awarded by order of court. The question is: What effect will the "carry over" award have on the award of her dower?

Neither the County Judge nor the Circuit Court ruled, nor is it contended on this appeal, that the widow was entitled to an allowance after the award of her dower.

The purpose of the statutory provisions was to provide for the widow and dependents during the emergency and until they might receive their share of the estate, and the statute has very wisely provided that:

"Upon the petition of any person interested in the estate, the county judge may increase, decrease, discontinue or modify the allowance; but in no event shall such allowance exceed the sum or value of twelve hundred dollars."

The widow was entitled to a dower interest of one-third of the personal property of her husband's estate and also, when allowed by order of court, a "carry-over" allowance. Both are statutory allowances. It was not the intent of the law that same be an advancement against her dower, neither was it the

534

intent of the law that this burden be borne entirely by those receiving the remainder of the estate. Any allowances pursuant to Section 733.20, supra, were independent of dower. After payment of such alimony allowances they should be deducted from the corpus out of which her dower is due and the dower calculated, using the remainder after the deduction as a basis. When the personal estate has been depleted by the widow's applying for and receiving a portion of the estate, under Section 733.20, supra, she will be estopped to complain that the dower is calculated after deduction of such payments to her.

It does not appear that the County Judge did err by his judgment, and the Circuit Court judgment appealed from be and it is reversed, with directions that judgment of the County Judge be revised so that dower will be computed on the net estate after the deduction of the amount allowed for quarantine money.

THOMAS, C. J., ADAMS and SEBRING, JJ., concur.

TERRELL and CHAPMAN, JJ., dissent.